Morning. Please be seated. Madam Clerk, please call the first case. 12-24-27. We're on Edmonton Avenue v. City of Chicago. Council, please step forward that are arguing. Introduce yourself and how much time you need. Good morning, Your Honor. Carrie Maloney-Wayden on behalf of the City of Chicago and Officer Garza. We're asking the court for 15 minutes, and we'd also like a few minutes for rebuttal. Good morning, Your Honors. My name is Jack Kennedy, and I, along with my co-counsel, James Montgomery, represent Conetta Davis, who is the mother and special administrator of the estate of Darrell Hamilton. We would like 15 minutes as well, please. Okay. Thank you. You may proceed. Good morning, Your Honors. May it please the court. Your Honors, the trial court in this case abused its discretion by granting the plaintiff a new trial based on a brief reference during the opening statement to evidence that was never admitted. Right before this case went to verdict, the trial court believed that the jury would not treat the opening statement as evidence, and yet immediately after the verdict reached the opposite conclusion when the only thing that had changed was that the verdict had come in for defendants. A change of mind without any reason for it is the very definition of an arbitrary ruling. This morning, I'll first explain why the trial court abused its discretion by granting the new trial and then explain that the trial court correctly rejected the jury instructions issue that Davis is now appealing. We're asking this court to reverse the new trial order and to instruct the trial court to enter judgment on the jury's verdict. Turning first to the issue concerning the new trial order, it is well settled that there should be a significant reason for a court to set aside a jury's verdict. It's not enough just to have an error. It's not enough that the jury might have heard something the jury should not have heard. Throwing out a verdict granting a new trial should only be done when there has been an error that causes such substantial prejudice that it's impossible to say it did not influence the verdict. That sort of prejudice could not possibly have occurred here from a brief remark at the beginning of a two-week jury trial that neither the court nor Davis' counsel thought warranted a new trial right before the verdict. And this is especially the case because the court instructed the jury not once but twice that opening statements are not evidence and that they should disregard attorney's statements not supported by the evidence. The record reflects that the trial court, there was a colloquy among counsel after I think the plaintiff's case was substantially completed. And the trial judge made a comment to the effect that I thought the plaintiffs were going to introduce some evidence about Darrell Hammond's character that they didn't introduce and that causes me to change my mind about this evidence. What did that refer to? Well, that was regarding the admission of the underlying evidence. And as this court just pointed out, the court did change its mind about admitting the evidence. And that is why the opening statement comment was sort of left hanging because initially when the comment was made, defense counsel thought that underlying evidence was going to come in. So during the trial after the court heard the plaintiff's case, the court changed its mind about that. And we're not complaining that the court changed its mind about the underlying ruling. And I believe that the court's concern was that initially the judge thought the plaintiff was going to present the case in a way that showed Mr. Hamilton to have a very flattering character. And they did not actually highlight much about his character at all. So the judge was initially going to admit the evidence because that would counter the plaintiff's, what the court thought to be the plaintiff's presentation of Mr. Hamilton's character. But the city's rationale for admitting the evidence didn't relate to Darryl Hammond's character. It related to motive. That's correct, Your Honor. That's correct. And that's why we still maintain that it would not have been an abuse of the court's discretion to actually admit the evidence. And because the trial court could have admitted that evidence without any concern that a new trial would be necessary because the evidence would be so substantially prejudicial, then surely the court, then a brief reference to unadmitted evidence, could not have been so substantially prejudicial that it warranted throwing out the verdict. And again, when the court first made its ruling about whether the jury was going to treat the opening statement as evidence, it had already instructed the jury once, opening statements are not evidence, and that's why the court thought the jury would listen. When the, right before the case went to verdict, the court instructed the jury a second time, attorney's statements that are not supported by evidence should be disregarded. So after the verdict, the judge should have had less reason to change its mind about its original assessment instead of more reason. And again, the standard for throwing out a jury verdict, you know, it's not enough just because the judge changes his mind. There has to be substantial prejudice from whatever the error is. And in this case, there's even good reason to think that this jury knew exactly how to follow instructions to disregard evidence because the jury initially heard a hearsay statement from paramedic Beauregard that was prejudicial to the city's case, and the judge ruled it inadmissible and instructed the jury, in order to cure the prejudice from that, to disregard the statement. Plainly, that jury followed the instruction to disregard the statement because it came out for defendants. So there's, in fact, good reason to think this jury knows exactly how to follow the instruction to disregard statements that are not supported by evidence. Again, this statement was brief, came at the beginning of the trial, and there's just no way to say that that is what the jury based its decision on instead of eight days of trial testimony that recounted the facts. Now, in addition to the flip-flopping without a reason for it, the court based its change of heart on an incorrect assessment about what the facts were when it was talking about the mistrial with counsel. The court thought Davis had not waived her argument on this point because the court got wrong what her comments referred to. Ms. Davis' counsel, at the time that this opening statement was discussed, didn't recognize there could be prejudice from the statement, but said, we can live with that. It is what it is. We think opening statements are not evidence, and we want to go to the verdict. So when the court afterwards was looking at those statements, the court got it wrong and thought those statements were talking about frustrated acceptance with the court's decision to grant the mistrial. That's exactly wrong. Ms. Davis' counsel did not want the mistrial. They resisted the mistrial. Those statements were about the opening statement and its prejudicial effect on her, and she could live with it. Only after the verdict did Ms. Davis change her mind about that and argue that it was so substantially prejudicial that the jury could only have decided on that basis. The circuit court should not have overlooked Davis' waiver of that as part of its rationale for changing its mind. Finally, the other reason why this reflects an abuse of the court's discretion is because, as I mentioned, this is a ruling that there is a close question about, the underlying evidentiary ruling. The parties debated it at great length. Initially, the trial judge ruled that the evidence could come in. Then the court changed its mind. In a prior trial on this matter, the judge actually admitted the evidence. So this shows that it's a close question. And coming out either way would not be an abuse of the court's discretion. So if it would be permissible to actually hear the evidence itself, then merely hearing a reference to evidence that never came in and the jury was told to disregard that reference could not possibly have so substantially prejudiced Ms. Davis that a new trial is warranted. Is there any evidence in the record as to in whose favor the 7 to 5 split on the previous trial was? There is no evidence in the record. There is the jury note that says 7 to 5, but it doesn't say which way the split favored. Ms. Davis says that the split favored her. I don't have any basis from the record to say one way or the other whether that's true or not. However, our point about that is if in the last trial the jury actually heard the evidence, not just a reference to the evidence. So if it heard the actual evidence and supposedly still favored Ms. Davis, then surely just hearing the reference to the evidence this time could not have so substantially ruined her case that she couldn't have gotten a fair trial. If there are not any further questions regarding the new trial order, I would like to turn to Ms. Davis's alternate ground for affirming the new trial order, and that's regarding the jury instructions. We submit that this court does not need to actually decide who has the burden of proof on this jury instructions issue because in this case the defendants should have had the burden of proof. We satisfied our burden to this jury because, and we know that because there was a special interrogatory that tested the issue at the heart of the case. And the issue at the heart of the case, as Ms. Davis concedes, is whether Officer Garza reasonably feared death or serious bodily harm when he shot Mr. Hamilton. And that special interrogatory asked exactly that. When Officer Garza shot Hamilton, did Officer Garza reasonably believe that Hamilton's actions placed him, Officer Garza, in imminent threat of death or serious bodily harm? The jury answered yes. It could not have reached that conclusion unless it believed defendant's case over the plaintiff's case. And Ms. Davis now claims that that special interrogatory somehow was tainted by the burden of proof, but that can't be the case when you look at the instructions in their entirety because that instruction and its plain language is not phrased in terms of, did Ms. Davis prove that Officer Garza did not reasonably fear death? No. It asked, did Officer Garza reasonably fear death? The burden of proof was relevant to the jury for purposes of deciding the general verdict. And the court instructed the jury along the lines of, here are the elements the plaintiff must prove. If the plaintiff doesn't prove any of these elements, your verdict should be for defense. And then you should fill out verdict form A if you find for the plaintiff and verdict form B if you find for the defendant. You must also answer two special interrogatories. So by the time the jury got to the special interrogatories, it had reached its general verdict and the burden of proof was done. The jury could not have just said yes if what it really thought is, I just can't decide whether Officer Garza did or did not reasonably fear death, and therefore I'm going to have to go for defendants because the burden, the tie goes to the defendants. The jury could not have said yes to a question that asked, did Officer Garza reasonably believe that Hamilton's actions placed him in imminent threat of death without actually believing that? You're assuming that the order in which the jury took the general in the interrogatories is the way you said it. We don't know that. Well, we do know that juries are presumed to follow their instructions, and if the court looks at how the jury was instructed, that's exactly how it reads. Not word for word, but in essence. It may be how it reads, but we don't know what they actually did. We don't know what they actually did, but in order to import the burden of proof into that special interrogatory, the jury would actually have had to invert the words. So instead of just answering the simple question, you know, did Officer Garza believe that he was in imminent threat of death? The jury would have had to say, well, what this question is really asking is, did Davis prove that Officer Garza did not reasonably fear death? That's just an unnatural reason, reading, and there's no reason to believe that that's how the jury treated the special interrogatory. So we submit that that resolves, whether or not there was error in the instructions, that resolves it for this case, because if the defendants had the burden, we would have satisfied it. Unless there are further questions on the jury instructions issue, I would like to reserve my remaining time for rebuttal. Thank you, Your Honor. Mr. Kennedy. Good morning again, Your Honors, and may it please the Court. The defendant's argument in this appeal is that Judge Washington granted a new trial because he did not like the jury's verdict. That accusation is completely false, and it should be rejected in its entirety. This Court should affirm the decision below because Judge Washington's reasons for granting a new trial were entirely rational. They were not, as defendants suggest, merely a pretext for overriding the jury. Alternatively, this Court should affirm because the defendant's jury instructions, which were given over Davis's objection, turned the burden of proof on its head and required Davis to affirmatively disprove the defendant's affirmative defense. Because the burden of proof was improperly inverted, Davis was entitled to a new trial, and the circuit court's order granting one should stand. But turning to the first issue, it was well within Judge Washington's sound discretion to grant a new trial after defense counsel revealed Hamilton's prior arrest and pending criminal charge to the jury. It was proper. It was proper in opening statement for defense counsel to make that reference because the Court had ruled that it would admit the evidence. That's true, Your Honor. Our claim is not that defense counsel did anything wrong. But part of the analysis in reversing because of errors made in opening statements or closing arguments is misconduct by counsel. And that's part of the analysis. That can be reason for reversal, Your Honor. That can be reason for granting a new trial. But it's enough that the trial was rendered unfair. And the Court's conclusion here that the trial was rendered unfair by this unchallenged statement, which, as counsel said, was left hanging out there, that Hamilton was due in court the very next day on an illegal gun charge. The Court's conclusion that that might have tipped the scales against Davis and warranted a new trial. Well, why did he wait until after? First of all, you didn't object before the verdict came in. And then did he wait until after the verdict came in? Well, that's not entirely correct, Your Honor. We did object in opening statement. You objected in opening statement, but you didn't want a mistrial. That's correct, Your Honor. And in Illinois, a party is not required to move for a mistrial or agree to a mistrial in order to preserve an issue for appeal or in order to preserve an argument that a new trial is warranted. But then the judge did explain to the jury that they are to disregard it. That is true, Your Honor. But although there is this general presumption that juries follow their instructions, that presumption is not absolute, and this Court's cases show that. There's a class of cases from this Court concerning prior bad act evidence where even when the trial judge gives a limiting instruction telling the jury they can use it only for a narrow purpose and not for a propensity purpose, that can still require reversal, even though the jury is presumed generally to have followed it. We recognize that, particularly in the context of prior bad act evidence, that juries don't always follow those instructions. Well, if we're going to assume that, what about the city's point that after being instructed to ignore the hearsay statement from the paramedic, the jury apparently followed that instruction because had they been disregarding instructions, they would have favored the plaintiff. That's one possible interpretation. So we should speculate that the jury was picking and choosing which instructions to follow. Not at all, Your Honor. What we're asking this Court to do is simply assess whether Judge Washington's reasons for granting a new trial were reasonable or whether they were not. That's the question for review here. The question for review here is not whether Davis waived the objection. The question for review is whether Judge Washington clearly abused his discretion. And that necessarily turns on whether, as we submit, Judge Washington's reasons for granting a new trial were entirely rational or whether, as defendants suggest, he acted for some improper reason. And as the Court explained in its order granting Davis's motion for a new trial, the Court initially anticipated that this evidence would be admissible because it expected Davis to place Hamilton's character substantively at issue as part of her damages evidence. What do we know? I mean, Judge Washington didn't say that much about his reasoning, did he? I'm sorry. He didn't explain his reasoning very thoroughly, did he? At which? At the end, when he called for a new trial. Well, he explained that he initially anticipated that the evidence would be admissible and he explained that he therefore denied Davis's motion in limine. The record shows that when that assumption did not pan out, his Honor properly reconsidered his in limine ruling and excluded the underlying evidence. At that point, with two days to go in a two-week trial, defendants moved for a mistrial. Defense counsel claimed that the jury would remember the statement and hold it against them that the underlying evidence was not admitted. The judge rejected that. Not only the judge rejected that, Ms. Davis rejected that, very specifically saying we don't think the jury is going to hold this against the city and we don't think after hearing eight days of evidence, the jury is even going to remember that statement. That's the position that your client took. That is true, Your Honor, but nothing Davis's counsel said, no view advanced by Davis's trial counsel could bind Judge Washington or in any way limit his authority, because this Court's cases recognize that trial judges have the affirmative duty and indeed the responsibility to grant a new trial when they determine, after reflecting on the proceedings as a whole, that a party was deprived of a fair trial. This jury heard three things about Darrell Hamilton. They heard he was running from the police, they heard he had a gun, and they heard he was due in court the very next day on an illegal gun charge. Well, the first two you're not claiming shouldn't have been admitted. Absolutely correct, Your Honor. Absolutely correct. The first two things went directly to what the jury had to decide. The third had nothing to do with anything other than to poison Davis's case, and the Court's conclusion that it had precisely that effect was not arbitrary, fanciful, or unreasonable. It was eminently reasonable. On what basis? On the basis that this comment tipped the scales against Davis and deprived her of a fair trial. This unchallenged assertion in opening statement. What about the city's point that if you're right about the seven-to-five split in the previous trial and the evidence actually came in in that trial, how can you say that a reference in opening statement without admission of the evidence at all would substantially prejudice your claim? Well, different juries are different, Your Honor, as we all know, and different trials are different. And this Court defers to the trial judge's assessment of prejudice because the trial judge is in the best position to assess prejudice. And defendants don't challenge that at all. They just simply claim that Judge Washington harbored some kind of bias and threw out the verdict because he did not like it, as they put it on page three of their reply brief. There's no evidence to support that. And when you claim that a judge was biased against you, you should have some good evidence to support that. The only thing that defendants point to is this comment that, made by the judge in the written order on the new trial motion, saying that it held out hope for an acceptable verdict or settlement. Read in context of what happened here, it's clear that Judge Washington realized he made a mistake at motions in limine. He properly reconsidered his ruling because the assumption he was operating under was false, that Davis would place Hamilton's character at issue. And it was, in fact, defense counsel who created that false impression in arguing against Davis's motions in limine. When the Court reconsidered its ruling, it excluded the evidence. And at that point, defendants moved for a mistrial. The issue for the Court in ruling on defendants' mistrial motion was not whether Davis was prejudiced. It was whether defendants were prejudiced. It was not until after the verdict that the Court was called upon to assess prejudice to Davis. And the Court's conclusion that she was, in fact, prejudiced by this was not arbitrary, fanciful, or unreasonable. Even if this Court disagrees with Judge Washington's decision or even if this Court would have made a different decision, that does not render his Honor's decision a clear abuse of discretion. A clear abuse of discretion exists only where the judge's decision falls so far outside the bounds of reasonableness that no reasonable person could ever agree with it. The fact that we can stand here today and have a reasonable discussion about what Judge Washington should or could have done means that his decision was not a clear abuse of his discretion. And while it's unfortunate that defendants resort to claiming that he was biased against them, it's understandable that they do so because of the high... I don't think you emphasize too much the bias. I mean, I don't think that's really what their brief turns on. Well, even if it's not what their brief turns on, it's incumbent upon them to show that there is a clear abuse of the Court's discretion. And because of the deference given to trial judges in assessing prejudice, this Court should defer to Judge Washington's determination that this reference that Daryl Hamilton was due in criminal court the very next day on an illegal gun charge, that that hurt Davis's case, that that unfairly tipped the scales against her. And it's not necessary for Judge Washington to conclude that this was outcome determinative. It is enough, as we point out in our brief, that it might have tipped the scales against Davis in a close case, as this one was. Then why did the plaintiff argue against a mistrial when she had the opportunity? Well, this request came, Your Honor, at the 11th hour of this trial. Well, wait. The request followed the sua sponte decision of the trial court to reverse itself. So I'm sorry. You were answering Justice Buczynski's question. But the motion for a mistrial followed the trial court's. Exactly, Your Honor. I wasn't meaning to suggest that it was a tawdy request. I was simply pointing out that this came two days before the end of a two-week trial. So at that point, you spent two weeks with this trial, all these witnesses, all these experts, and you were ready to roll with it. You were satisfied that it was a fair trial. And then you were offered an opportunity for a mistrial based on this same issue and turned it down. Well, the issue was slightly different. It was whether defendants were prejudiced, not whether Davis was prejudiced. But the fact that Davis resisted a mistrial at that stage didn't mean that she waived her request to a new trial. In fact, her counsel expressly stated pre-verdict that he was preserving this. And the court accepted that saying, right, nobody waives their objections. And defense counsel did not challenge that. But even if this court would have believed that Davis did, in fact, waive the issue, that wouldn't bind Judge Washington. It wouldn't make his decision an abuse of discretion. And so we ask that you affirm, because his Honor's reasoning, his Honor's basis for granting a new trial, that this unchallenged assertion that was left hanging out there prejudiced Davis was entirely reasonable. But alternatively, this court should affirm, because the defendant's jury instructions completely misstated Davis' burden of proof and required her to disprove their affirmative defense. Defendants attempt to evade review of this issue on the grounds that the jury returned a special interrogatory answer. And they claim that the special interrogatory answer is necessarily divorced from the rest of the jury instructions. That is not so. That argument ignores the fact that juries are told to consider the court's instructions as a whole, not picking out some and disregarding others. And the court's instructions clearly set out that Davis had the burden of proving that the shooting was unjustified. And so the presumptive answer to the special interrogatory as to whether the shooting was justified was a presumptive yes, until Davis met her burden of persuasion, more likely than not, and made it a no. So the special interrogatory answer cannot cure problems in the underlying burden of proof. Under defendant's reasoning, the judge could have instructed the jury that Davis had to prove her case by clear and convincing evidence or beyond a reasonable doubt, and that would be totally unreviewable on appeal, because there was a special interrogatory which didn't specifically link back to the burden of proof instructions. But the plaintiff's position on the willful and wanton, and clearly the Tort Immunity Act creates a presumption of immunity unless a public employee's conduct is willful and wanton. That's correct. So your theory, the plaintiff's theory of meeting the burden on willful and wanton is police officer pulled out a gun and shot the plaintiff, willful and wanton, right? That's all the plaintiff has to prove for a prima facie case. Pulling out a gun and shooting someone is a course of action which shows an actual or deliberate intention to cause harm. And defendants don't challenge that. But I just want to understand that that is your position. That's all the plaintiff has to prove. Absolutely, Your Honor. That is what the patent instruction says. That's what the statutory definition says. And it makes perfect sense. As this Court's cases say and as the Supreme Court cases say, the purpose of Section 2202 immunity, which is the immunity that's at issue in this case, is to protect local public entities and public employees from conduct that is merely negligent or merely careless. It does not apply when the test for willful and wanton conduct is satisfied. And what happened here is defendants... It would seem to me, if that's right, we would have literally tens of thousands of police citizen cases where the citizen said, I was battered, my front door was broken in, I was knocked down, I was shot, whatever. And that's a prima facie case. It is a prima facie case. The legislature has recognized that peace officers have the right to use deadly force. And they passed a statute which permits that. And that's the statute which we now know from defendant's appellant's brief that they intended to rely on. They didn't actually prove... They didn't actually even plead that affirmative defense below. But the legislature has stated that peace officers have the right to use deadly force and self-defense. And they've also stated in Section 14 of that same article that this is an affirmative defense. And Illinois case law is clear that to prove a battery, one need not disprove any affirmative defenses that the defendant might have. Davis' prima facie claim here was for battery. She had to prove an intentional, unconsented, harmful, or offensive touching. She did that through Officer Garza's testimony that he intentionally shot Hamilton. Because defendant Garza invoked Section 2202 immunity under the Tort Immunity Act, Davis had an additional hurdle to clear. She had to prove that the conduct was willful and wanton as that term is defined specifically in the Act. And the Act's definition, which is mirrored in the... Willful and wanton is a term of art. And willful and wanton for a private citizen and willful and wanton for a police officer in the course of performing his or her duties. Aren't they two different things? No, Your Honor, they're not. This Court is obliged to apply the plain text of the statute. And the reason the patent instruction mirrors the statute is because that's a statutory definition. A court has no ability to read in exceptions, limitations, or other provisions into a statutory definition. And our position here is simply that the jury should have been instructed per the patent instruction, which mirrors the Act's text. Defendants completely changed the meaning of willful and wanton conduct that the legislature specifically provided. I think our position would be very different if the legislature hadn't said what willful and wanton conduct even means. And one could have an academic debate about what it means. But here the legislature has supplied a specific definition. And that definition must control to the exclusion of any other definitions. And the fact that Gaza's conduct here, the fact that this willful shooting was willful and wanton, doesn't mean that defendants lose the case. It doesn't mean that they have automatic liability. It simply means they have to plead and prove a defense that could insulate them from liability. And here they ---- And so the answer to the special interrogatory says that the time he shot Hamilton, Officer Garza was in reasonable fear of his life. That's correct, Your Honor. But that does not cure the problem because the jury was told that was presumptively true. The evidence in this case was closely matched. There were three independent eyewitnesses who testified that Hamilton was running away unarmed when he was shot in the back of the head by Defendant Garza. Defendant Garza testified that Hamilton was pointing a gun back at him. And that's the reason that he shot. The fact that a single jury member could have concluded that the evidence was closely matched and it couldn't pick a winner, under these instructions it was required to render a defendant's verdict. In fact, under those circumstances, the jury would have been compelled to render a plaintiff's verdict. And this Court recognizes, we cite to Christensen v. Richter in our brief, this Court recognizes that inverting the burden of proof is prejudicial error of the most fundamental sort. The responsibility that defendants had here was to plead and prove an affirmative defense that could insulate them from liability. Under their reading of Section 2202, under their reading of the Tort Immunity Act, that somehow, even though it doesn't say it in its text anywhere, a plaintiff has to disprove any lawful justification that could justify the conduct. Under that reading, a plaintiff would have to introduce evidence to affirmatively disprove any conceivable affirmative defense that might apply in order to survive a motion for a directed verdict. So not only is it not what the text of the statute says, it also would produce all kinds of absurd results. And additionally, although we can see no ambiguity in the language used in the definition of willful and wanton conduct, to the extent this Court detects any ambiguity, it must resolve that in favor of plaintiff, because the act has to be strictly construed. And so while we don't believe that it's ambiguous at all, we believe that the plain text clearly supports our position. And our position is simply that the jury should have been instructed with the patent instruction, which contains the act's text. And by changing the definition and adding a whole new element that Davis had to prove here, which was to disprove, to prove a negative, to disprove that she had, under these instructions, she had to prove that Garza did not reasonably believe that deadly force was necessary to prevent him bodily harm to himself. That should have been on defendants to prove, not Davis. The fact that defendants attempt to avoid the merits is understandable, because the plain text of the statute does not support them. In fact, their counsel said during the jury instructions conference, that if the jury was given the patent instruction, they would readily conclude that the conduct was willful and wanton, because it meets that test. And so because the burden of proof was inverted, because Davis was settled with this entirely new element of proof that should not have been hers, and because defendants, because that burden was removed from defendants, she was entitled to a new trial. And it's important to note that defendants' trial counsel actually emphasized this during closing arguments. Counsel stated repeatedly that all of the burden was on Davis, that defendants had absolutely no burden of proof. And that was exactly counsel's argument for rendering a defense verdict, was simply that Davis hadn't met her burden of persuasion. And because the burden of proof was inverted, a new trial is required. Unless the court has questions. Thank you very much. Thank the court for its time. Thank you. Just briefly, your honors. Regarding the new trial issue, I just want to point out that the jury did not actually hear the evidence in this case. So counsel's reference to and reliance on cases in which prior bad act evidence actually was admitted and whether or not that would be harmless or warrant a new trial is not relevant. Counsel also pointed out that the question for this court's review is whether the judge's ruling was reasonable. Our position is it is not reasonable, nor could counsel explain why it was reasonable to think one way right before the verdict and think the opposite way right after the verdict. This court does not actually have to think that the trial judge had an improper reason for changing its mind, because changing your mind for no reason at all is arbitrary. That's what it means to be arbitrary, not having a reason to rule as you did. That is an abuse of discretion alone. But in this case, the judge actually used words that suggested he was holding out hope for, quote, an acceptable verdict. There's still no explanation from Ms. Davis about what that could have meant if it didn't mean that the judge was hoping that the verdict would come in for plaintiff and changed his mind because it didn't. But again, the court does not actually have to think that there was any improper reason for changing his mind, because not having a good reason is enough to show arbitrary ruling. Now, the final point on this is that the issue, so counsel argues that the issue was prejudice, at the time of considering the mistrial, was prejudice to the defendants and not prejudice to Ms. Davis, and that's what the court changed its mind about or was assessing. Our point is that what the court was actually assessing at the time was whether the jury would treat the opening statement as evidence. And according to the court, opening statements are not evidence. This jury is not going to treat it as evidence. This jury has been told to disregard attorney statements. They have to do that all the time in the context of rulings on attorney objections. So what the court assessed right before the verdict was, was the jury going to think that this is evidence? After the verdict, that's suddenly when the court changed its mind and thought not only did the jury treat this as evidence, but they treated it as such an important piece of evidence, ignoring two instructions, now two instructions, that that was what their result was based on, or that it's impossible to conclude that that did not influence the verdict. That's why we're complaining about the flip-flop. That's why the judge's ruling in fact was a change. What about Mr. Kennedy's point that the Tort Immunity Act contains a definition of willful and wanton, and the instruction that was given to the jury expanded on that definition in this case? Well, we submit that when, as we point out in our brief, that it's settled that when an instruction, an IPI instruction does not adequately state the law, then it should be modified. And in this particular context, there should be a modification. Plaintiff's theory on just meeting her burden, because again, just to lay it out, 2202 was our affirmative defense. All we have to prove for that affirmative defense is that our officer was executing and enforcing the law. If so, the legislature grants immunity for causing harm while doing that. Then it becomes plaintiff's burden, which even concedes, not the officer's burden, to show willful and wanton conduct. To overcome that. Now, if this court were to accept her definition of willful and wanton, then simply pulling the trigger in response to a threat to the officer's life would be willful and wanton. That's an absurd interpretation. No Illinois court, they haven't been able to cite an Illinois court that has come out that way. And we point out the federal courts come out the opposite way. The federal courts hold that an officer who is legally justified because he fears for his life is not willful and wanton. So her interpretation would actually take away the immunity altogether. Because not only would we not have the 2202 immunity that we're entitled to, we would also be branded as willful and wanton. The jury would be told this officer's conduct is willful and wanton. If ever there was a case in which the General Assembly wanted to protect officers who are executing and enforcing the law, it would be the case where the officer causes harm because he fears for his life. And they would make that the case least protected instead of the case most protected. We submit that would simply be an absurd interpretation of the law. Finally, with respect to the special interrogatory, if the jury was in equipoise about reaching the general verdict, in other words, if they said we just can't decide whether Officer Garza reasonably feared death or not, then they could have reached their verdict for the defendants either by concluding that or by concluding that, in fact, the defendants had proved Officer Garza was in reasonable fear of death. But if they concluded just because they were in equipoise and they weren't really sure whether he reasonably feared death, they would not have answered the special interrogatory that asked, did Officer Garza reasonably fear death, they would not have been able to answer it yes. They would have had to answer it, we're not sure. That's not how they answered the special interrogatory. That interpretation of the words of the special interrogatory is completely unnatural, and therefore that special interrogatory tested the verdict and showed that if we had the burden of proof, the jury would have come out the same way. But even on the merits, we submit that the court properly instructed the jury with respect to Wilco and Watten and who had the burden of proof. Unless there are further questions, we respectfully request that the court reverse the new trial order and ask the trial court to enter judgment for defendants on the jury verdict. Thank you, Your Honors.